United States Court of Appeals
For the Eighth Circuit
_____

No. 22-1738
_____

Rosaura Flores Brizuela; A. A.L. F.; A. M.L. F.; E. A.C. F.

*Petitioners*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: March 15, 2023
Filed: June 27, 2023
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

    Rosaura Flores Brizuela and her children, natives and citizens of Honduras, petition this Court for review of a Board of Immigration Appeals (BIA) order affirming an immigration judge's (IJ) decision ordering them removed and denying their claims for relief. Having jurisdiction under 8 U.S.C. § 1252, we deny the petition.

Appellate Case: 22-1738    Page: 1    Date Filed: 06/27/2023 Entry ID: 5290112

I.

Brizuela and her children entered the United States on November 8, 2017, and were subsequently issued Notices to Appear (NTAs) by the Department of Homeland Security (DHS), charging them with removability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) ("[A]ny immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . . is inadmissible."). However, they were extended humanitarian parole on November 11, 2017, to run until November 10, 2018.[1] Nonetheless, removal proceedings commenced; Brizuela applied for asylum with her children as derivative applicants.[2] Brizuela additionally applied for statutory withholding of removal and protection under the Convention Against Torture (CAT). An initial hearing was conducted on May 23, 2018, where Brizuela conceded to the charges in the NTAs.

The IJ held a merits hearing on September 11, 2018. There, Brizuela contended that she was not removable because her humanitarian parole would not expire for another two months and, thus, the proceedings should be terminated. The IJ ultimately decided to continue the proceedings so DHS could have "a chance to address th[e] issue," though it recognized the matter would become moot on November 10, 2018, when the parole status expired. The IJ reset the merits hearing for December 14, 2018. At that hearing, Brizuela conceded that her parole had expired and that she was removable. The IJ then took up the issue of Brizuela's claims for relief.

---

[1]"The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A).

[2]Given the derivative nature of the relief sought by the children, we refer only to Brizuela throughout this opinion.

As relevant to this appeal, Brizuela testified that, in Honduras, her partner, Darwin Chavarria, was killed by MS-13 "gangsters" in 2013. Brizuela did not witness his death, nor did she know why the gangsters killed him. Darwin's mother reported the incident to law enforcement, and the police arrested one of the gangsters (but apparently not the shooter). The gangsters began to threaten her over the phone, stating that Brizuela "was gonna' pay for it because a report was made." Brizuela was never threatened in person, and though she occasionally saw MS-13 gangsters in public, they never approached her or attempted to carry out their threats. Darwin's mother fled to another part of the country, but she later returned. Brizuela testified that the threats eventually stopped but resumed in 2017. The gangsters called her place of employment pretending to be clients and threatened her, describing her clothing and warning her to be careful. According to Brizuela, the gangsters committed these acts because they believed Brizuela was "part of those who had filed th[e] report." Because Brizuela perceived the threats to be "more frequent, detailed, and serious," she fled with her children to the United States.

The IJ began with Brizuela's claim for asylum. While he acknowledged Brizuela's evidence of psychological harm, the IJ determined that the threats did not rise to the level of persecution needed to obtain asylum. The IJ held in the alternative that her purported particular social groups—"family of Darwin" and "witnesses in criminal proceedings who will be targeted in Honduras"—were not cognizable. The IJ also rejected Brizuela's argument that she was persecuted on account of her political opinion and found that Brizuela's objective fear of future persecution was undercut by the fact that Darwin's mother still lived in the area unharmed. Accordingly, the IJ denied her claims for asylum and the more stringent statutory withholding of removal. Finally, the IJ found that Brizuela had failed to carry her burden to obtain protection under CAT. Accordingly, he denied her claims for relief and ordered her and her children removed to Honduras.

Brizuela appealed the decision to the BIA. The BIA agreed with the IJ that the gangsters' threats did not rise to level of persecution and that Darwin's mother's presence in Honduras minimized any objective fear of future harm. Accordingly, it

affirmed the denial of asylum and statutory withholding of removal. The BIA also agreed that Brizuela had failed to carry her burden to obtain protection under CAT. Additionally, Brizuela contended that the IJ violated her due process rights when he continued her case instead of terminating it upon the discovery of her active parole status. The BIA rejected her argument, finding that her removability at the time of the appeal was uncontested and that she had not established how the proceedings would have been different if her case had been terminated. Accordingly, the BIA dismissed Brizuela's appeal.

## II.

In her petition for review, Brizuela claims that the BIA erred (1) by finding that her due process rights were not violated when the IJ continued her case instead of terminating it and (2) by denying her application for asylum and statutory withholding of removal. We address each argument in turn.

### A.

Brizuela claims that the IJ violated her due process rights when he continued, rather than terminated, her proceedings upon discovery of her active parole status. "We review procedural due process challenges de novo, 'as the question of whether an immigration hearing violates due process is a purely legal issue.'" Ramirez v. Sessions, 902 F.3d 764, 770 (8th Cir. 2018) (citation omitted). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Id. at 771 (citation omitted). However, "it is axiomatic in this Circuit that an alien's due process claim must demonstrate both a fundamental procedural error *and* prejudice." Id. at 772 (citation omitted).

As an initial matter, Brizuela argues that Matter of Y-S-L-C-, 26 I. & N. Dec. 688 (BIA 2015) obviated a petitioner's need to demonstrate prejudice to sustain a due process claim in the immigration context. In Matter of Y-S-L-C-, the BIA reviewed a matter that involved an IJ belittling a 15-year-old asylum applicant. See

-4-

id. at 691.  The BIA ultimately remanded the matter to a new IJ, finding that "[the] hearing was not conducted in a manner that me[t] the high standards expected of Immigration Judges."  Id.  Whatever the impact of Matter of Y-S-L-C-, we agree with our sister circuits that it did not abolish the requisite showing of prejudice in the context of due process claims.  See Tinoco Acevedo v. Garland, 44 F.4th 241, 249-50 (4th Cir. 2022) (noting that while Matter of Y-S-L-C- relied on due process cases, the decision to remand appeared to be "independent of a due process violation" as the BIA did not apply the applicable framework); see also Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 213, 226 (3d Cir. 2017) (requiring a showing of "substantial prejudice" to establish a due process violation despite citing Matter of Y-S-L-C-); Cruz v. Att'y Gen., 746 F. App'x 869, 871 (11th Cir. 2018) (per curiam) (same).

Here, Brizuela argues that she was prejudiced by the continuance because the IJ should have terminated the proceedings as soon as it determined that Brizuela and her children were admissible under the humanitarian parole.  First, though not determinative of our decision, we note that Brizuela misstates the IJ's findings and reasons for continuing the proceedings.  While Brizuela contends that by continuing the proceedings the IJ "was engineering a preferred outcome," the record demonstrates that the IJ "ha[d not] researched th[e] issue before" and simply wanted "to give [DHS] a chance to address th[e] issue."  Second, we agree with the BIA that Brizuela has failed to demonstrate that she was prejudiced.  By continuing the removal proceedings, the IJ provided Brizuela with exactly what she was promised: presence in the United States until November 10, 2018.  Brizuela does not contest that she is now removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), nor does she explain how she might have otherwise obtained relief had the proceedings been terminated and she had filed an affirmative asylum application.[3]  See United States v.

---

[3]"Defensive" asylum refers to when an alien applies for relief once they are in removal proceedings before an IJ; however, an alien "physically present in the United States, and not in removal proceedings, may apply affirmatively for asylum to [DHS], and [DHS's] Asylum Office will have initial jurisdiction over the

Rodriguez, 420 F.3d 831, 834 (8th Cir. 2005) ("Actual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'" (citation omitted)).

As a final matter, we note that Brizuela spends a substantial portion of her briefing contending that the BIA did not alternatively address whether the IJ abused its discretion by continuing her case without good cause. See 8 C.F.R. § 1003.29 ("The immigration judge may grant a motion for continuance for good cause shown . . . ."). However, Brizuela failed to raise this issue as an independent claim before the BIA. Despite her arguments to the contrary, Brizuela raised this argument before the BIA only as a means of establishing the "fundamental procedural error"—prong one—of her due process claim. Because she did not appropriately assert an alleged abuse of discretion by the IJ as an independent basis for remand, the BIA had no reason to evaluate it outside of the context of her due process argument (which was unnecessary in light of her failure to demonstrate prejudice). Accordingly, Brizuela has failed to exhaust her administrative remedies as to this claim, and we decline to review it for the first time in her petition to review. Marambo v. Barr, 932 F.3d 650, 654 (8th Cir. 2019).[4]

---

application." Dhakal v. Sessions, 895 F.3d 532, 536 (7th Cir. 2018) (citing 8 C.F.R. § 208.2(a)).

[4]The Supreme Court recently held that a petitioner's failure to exhaust her administrative remedies in immigration proceedings is not jurisdictional. See Santos-Zacaria v. Garland, 143 S. Ct. 1103, 1120 (2023) ("Section 1252(d)(1)'s exhaustion requirement is not jurisdictional and does not oblige a noncitizen to seek discretionary review, like reconsideration before the [BIA]."). However, as in Marambo, we find administrative exhaustion appropriate where, as here, Brizuela "does not dispute that [s]he was represented or that the proceedings were adversarial." See 932 F.3d at 655; see also Santos-Zacaria, 143 S. Ct. at 1116 (declining to address whether "the Court of Appeals' *sua sponte* requirement that [a petitioner] comply with § 1252(d)(1) can be justified on alternative grounds").

Appellate Case: 22-1738    Page: 6    Date Filed: 06/27/2023 Entry ID: 5290112

B.

Next, Brizuela contends that the BIA erred by denying her claims for asylum and statutory withholding of removal. Brizuela is eligible for asylum and statutory withholding of removal if she can demonstrate "persecution or a well-founded fear of persecution" on account of a statutorily recognized basis. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). Brizuela argues that the BIA (1) applied the wrong standard for determining past persecution and (2) erroneously found that Brizuela does not have a well-founded fear of future persecution. "We review the [BIA's] legal conclusions *de novo* and its factual findings under a substantial evidence standard." Bautista-Bautista v. Garland, 3 F.4th 1048, 1052 (8th Cir. 2021). Accordingly, we will not disturb the BIA's findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quoting 8 U.S.C § 1252(b)(4)(B)).

First, Brizuela argues that the BIA invented a new, two-step inquiry to determine whether given conduct rises to the level of past persecution. In its order, the BIA acknowledged that Brizuela suffers from "generalized anxiety disorder, moderate post-traumatic stress disorder[,] and major depressive episode[s]." Nevertheless, it found that the unfulfilled threats received "over the phone, sporadically, over a 4-year period" were "not extreme conduct" needed to establish past persecution. The BIA stated, "Although psychological harm is sufficient and harm need not be permanent or serious to establish persecution, it still must result from an extreme level of conduct." In Brizuela's view, this created a "radical new legal theory never previously announced or applied either by the [BIA] or this [C]ourt" that requires petitioners to not only demonstrate that they suffered harm, but also that such harm resulted from extreme conduct. To the contrary, the BIA appropriately focused on conduct, not the resulting harm. Lemus-Arita v. Sessions, 854 F.3d 476, 481 (8th Cir. 2017) ("Persecution is 'an extreme concept that involves the *infliction or threat of* death, torture, or injury to one's person or freedom, on account of a protected characteristic . . . .'" (emphasis added) (citation omitted)). While psychological harm may substantiate an allegation of persecutory conduct or

-7-

evince its degree, especially in the context of threats, see id. (noting that threats constitute persecution only when they "are so menacing as to cause significant actual suffering or harm" (citation omitted)), the statute offers asylum and statutory withholding of removal only to those who have suffered from persecutory *conduct*. See Niang v. Gonzales, 492 F.3d 505, 511 (4th Cir. 2007) ("Thus, to establish a claim for withholding [of removal] an applicant cannot rely solely on psychological harm or a threat of such harm to others, but must also establish injury or a threat of injury to the applicant's person or freedom."). Accordingly, we find that the BIA correctly articulated the appropriate standard for evaluating past persecution.

Further, we find that substantial evidence supports the BIA's finding that the gangsters' threats did not rise to the level of past persecution. "[U]nfulfilled threats of physical injury" rarely rise to the requisite level. Lemus-Arita, 854 F.3d at 481 (citation omitted); see also La v. Holder, 701 F.3d 566, 571 (8th Cir. 2012) ("Threats alone 'constitute persecution in only a small category of cases . . . .'" (citation omitted)). "[O]nly when . . . threats are so menacing as to cause significant actual suffering or harm" will they constitute persecution. Lemus-Arita, 854 F.3d at 481 (citation omitted). Threats that are "exaggerated, nonspecific, or lacking in immediacy may be insufficient." Id. (citation omitted); see also Rivero-Guerrero v. Barr, 926 F.3d 1050, 1052 (8th Cir. 2019) (finding no abuse of discretion in denial of petitioner's motion to reopen when his "evidence of vague and unfulfilled threats failed to establish persecution").

Here, the threats were telephonic, sporadic, and over a period of four years. Given that the record does not indicate that the gangsters ever acted, or attempted to act, upon these threats during this long period, the threats lack immediacy and appear exaggerated. See, e.g., Villegas Sanchez v. Garland, 990 F.3d 1173, 1179 (9th Cir. 2021) (holding that substantial evidence supported the BIA's finding that the threats did not constitute persecution when they were "vague," occurred "over a period of weeks," and were "never followed through"). Indeed, "[w]e have found more direct and more menacing threats insufficient to demonstrate past persecution." Lemus-Arita, 854 F.3d at 481-82 (collecting examples of cases where threats were

Appellate Case: 22-1738   Page: 8   Date Filed: 06/27/2023 Entry ID: 5290112

insufficient to establish past persecution, including a threat at knifepoint, a direct death threat, and multiple written death threats that were not acted upon). While we acknowledge that some of the threats were specific, such as describing Brizuela's clothing, and likely caused Brizuela emotional distress, we find that "the record does not compel a finding that th[ese] threat[s] w[ere] 'so menacing' such that this case belongs to the 'small category of cases' in which . . . threat[s] alone constitute[] persecution." Cano v. Barr, 956 F.3d 1034, 1039 (8th Cir. 2020) (citation omitted) (finding that petitioner's "experience of being threatened at gunpoint while helplessly watching her son be beaten and abducted" did not compel a conclusion that the threats were persecutory when the petitioner "experienced only an unfulfilled threat of physical injury").

Second, Brizuela contends that the BIA erred in finding that she did not have a well-founded fear of future persecution. However, her argument is specifically tied to a favorable finding on her past-persecution claim, claiming that remand of the BIA's findings related to her past persecution would necessarily require remand to determine her well-founded fears of future persecution. Having affirmed the BIA's past-persecution determination, Brizuela offers no further basis for us to review the BIA's findings on this matter. Accordingly, we will not disturb them.

III.

For the foregoing reasons, we deny the petition for review.

_____